**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:<br><br>CITY LINE BEHAVIORAL HEALTHCARE, LLC.,<br><br>Debtor. | : | Chapter 7<br><br>Case No. 19-12493(AMC)<br><br>Hon. Ashely M. Chan, U.S.B.J |
| ANDREA DOBIN, Successor Chapter 7 Trustee of the Estate of CITY LINE BEHAVIORAL HEALTHCARE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIRST CLEARING CORP.,<br><br>Defendant. | : | Adv. Pro. No. 21-00033 |

**AMENDED MOTION OF ANDREA DOBIN, SUCCESSOR CHAPTER 7 TRUSTEE, TO VACATE THE JUNE 8, 2022 DEFAULT JUDGMENT AGAINST DEFENDANT FIRST CLEARING CORP., TO AUTHORIZE THE FILING OF AN AMENDED COMPLAINT, TO SUBSTITUTE PARTY AND AMEND THE CAPTION**

Andrea Dobin, the successor Chapter 7 Trustee ("**Successor Trustee**") for the Estate of City Line Behavioral Healthcare, LLC (the "**Debtor**"), by and through her counsel, McManimon Scotland & Baumann, LLC, respectfully submits this Amended Motion to Vacate the June 8, 2022, Default Judgment against Defendant First Clearing Corp. ("**Defendant**"). This Court should vacate the Default Judgment, as the Successor Trustee has reason to believe that judgment was entered against the wrong corporate entity, and the Successor Trustee is, thus, also moving to amend the Complaint to name the correct entity. Additionally, the Successor Trustee, as successor to Gary F. Seitz (the "**Former Trustee**"), moves to substitute as Plaintiff in this action and to amend the caption to reflect said substitution.[1]

## I. PROCEDURAL AND FACTUAL HISTORY

1. On April 17, 2019, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

2. On the same date, the Former Trustee was appointed as the Chapter 7 Trustee by the Office of the United States Trustee.

3. On April 16, 2021, the Former Trustee commenced the above-captioned adversary proceeding by filing an Adversary Complaint (the "**Complaint**") against Defendant seeking to recover $4,150,000 that had been transferred by the Debtor for less than reasonably equivalent value. [ECF 1].

4. Service was attempted on April 19, 2021, upon an individual believed to be an agent of Defendant. [ECF 4].

---

[1] The Successor Trustee submits this Amended Motion and all supporting papers under the prospective amended caption.

5. On July 28, 2021, Former Trustee filed his first Motion for Default Judgment. [ECF 8]

6. Due to insufficient service, the Court ordered, on November 3, 2021, that Former Trustee file an amended certificate of service evidencing proper service. [ECF 17].

7. Service was then attempted again, via alias summons, on November 9, 2021. [ECF 22].

8. Former Trustee filed a second Motion for Default Judgment on December 20, 2021. [ECF 25].

9. Due, again, to problems related to service, Former Trustee attempted service on Defendant via alias summons on February 15, 2022. [ECF 32].

10. On April 6, 2022, the Court warned Former Trustee that lack of action to prosecute the Adversary Proceeding would result in dismissal for non-prosecution. [ECF 34].

11. On April 21, 2022, Former Trustee filed his third and final Motion for Default Judgment against Defendant. [ECF 38].

12. Former Trustee filed a Certificate of No Response on May 9, 2022. [ECF 40].

13. On June 8, 2022, default judgment was finally entered against Defendant, in the amount of $4,150,000.00 [ECF 42](the "Default Judgment").

14. Upon information and belief, no meaningful collection efforts were undertaken.

15. On July 29, 2024, Former Trustee resigned from his position as Trustee in this matter and, on August 2, 2024, Successor Trustee was appointed to serve as Trustee in this matter.

16. Consistent with her service as successor trustee, the Successor Trustee has reviewed the administration of the entirety of this case, including the claim underlying the Default Judgment. As a result of this review, the Successor Trustee came to be of the opinion that the Former Trustee

had been confused by similarly named defendants and utilized the wrong name for the defendant in the suit.

17. After thorough review of the history of this case and the record, on March 5, 2025, Successor Trustee filed an initial Motion to Vacate Default, Authorize the Filing of an Amended Complaint, Substitute Party and to Amend the Caption ("**First Motion**"). [ECF 45.] The First Motion was served on all interested parties, including the expected target of the Amended Complaint proposed to be filed by the Successor Trustee.

18. On or about March 24, 2025, the Successor Trustee was contacted by counsel for Wells Fargo Clearing Services, LLC d/b/a First Clearing ("**WFCS**"), who Successor Trustee had identified as the proposed new defendant in this matter.

19. On April 17, 2025, WFCS filed an Opposition to the First Motion. [ECF 50.]

20. In support of the Opposition, WFCS filed the Declaration of Albert Caiazzo, President of WFCS (the "**Declaration**"). [ECF 50-1.]

21. In the Declaration, Mr. Caiazzo confirmed that WFCS merely acted as a clearing agent for a securities broker and former Wells Fargo subsidiary[2], then known as H.D. Vest Investment Securities, Inc. ("**HDVest**"), which ultimately received the funds. *See* Declaration, ¶¶11 – 18.

22. WFCS additionally supplied a redacted copy of the "Amended and Restated Disclosed Clearing Agreement of First Clearing, LLC" ("**Clearing Agreement**"), which confirmed WFCS' role in relation to HDVest as a clearing entity. [ECF 50-1, Exhibit A.]

---

[2] The former HDVest was owned by Wells Fargo from 2001 until 2011, when it was sold to Parthenon Capital Partners. Following the sale, Defendant and its successor, WFCS, continued to provide clearing services to HDVest. *See* Declaration, ¶14.

23. In light of this additional information, the Successor Trustee brings this instant motion to vacate the Default Judgment against Defendant, as Successor Trustee believes that judgment was entered against the wrong entity.

24. Successor Trustee also seeks to amend the complaint to name the proper defendant, HDVest (a different target than the First Motion).

25. Additionally, as successor in role and interest to Former Trustee, Successor Trustee seeks to substitute as Plaintiff in this adversary proceeding.

26. Finally, if substitution is granted, Successor Trustee seeks to amend the case caption to reflect said substitution.

## II. LEGAL ARGUMENT

27. Federal Rule of Civil Procedure 60(b) permits a party to "seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Kemp v. United States*, 596 U.S. 528, 533 (2022) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)).

28. Under F.R.C.P. 60(b)(1), a party may seek relief based on "mistake, inadvertence, surprise, or excusable neglect.", while under F.R.C.P. 60(b)(4) and (6), a party may seek relief based upon the judgment being void, or for any other reason that justifies relief.

29. F.R.C.P. 60(c) imposes deadlines on Rule 60(b) motions, requiring that they be filed "within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding". F.R.C.P. 60(c)(1).

30. By contrast, motions for relief under Rule 60(b)(6) are not subject to the one-year constraint. *Kemp*, 596 U.S. at 533. Rule 60(b)(6) empowers federal courts to relieve a party from a final judgment "upon such terms as are just", provided that the relief is sought within a reasonable

time and would not otherwise be available under Rule 60(b)(1) through (5). *Lilijeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988).

31. The Rule does not provide specific factors for determining what qualifies as "such terms as are just". *Id*. at 864.

32. However, the Supreme Court has long noted that Rule 60(b)(6) provides federal courts with broad authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949).

33. This power should only be applied in extraordinary circumstances, when relief under other provisions of Rule 60(b) is unavailable. *See e.g., Ackermann v. United States*, 340 U.S. 193 (1950) (holding that relief under Rule 60(b)(6) was unwarranted, as defendant's decision not to appeal denaturalization judgment was a conscious one).

34. The Third Circuit, similarly, has stated that, "[C]lause (6) is not a substitute for appeal…It is intended to be a means for accomplishing justice in extraordinary situations…" *Kock v. Government of the Virgin Islands*, 811 F.2d 240, 246 (3d Cir. 1987) (internal quotations omitted).

35. Obviously, the case law applying Rule 60 has evolved in response to defendants' motions to vacate default judgment, making their application to the case at bar awkward, at best.

36. In the matter at bar, judgment was entered against the wrong entity by the Former Trustee.

37. The Complaint identified the Defendant, based upon Former Trustee's information and belief that First Clearing Corp. received the funds that were intended to be recovered by this avoidance action.

38. Upon doing her own due diligence, Successor Trustee has determined that is not the case.

39. Pennsylvania corporate records reflect that First Clearing Corp. was no longer registered to do business in Pennsylvania at the time the funds were paid by the Debtor and/or the Complaint was filed. See **Exh. A**.

40. In fact, there are *two* inactive First Clearing Corps in the Commonwealth Secretary of State's records.

41. One, formed in North Carolina, merged with a Pennsylvania survivor in 1998. *Id*.

42. The other, a Pennsylvania LLC, also merged with a Pennsylvania survivor in 1998, then merged again into a second survivor in 2003, creating a Delaware-registered LLC known as "First Clearing, LLC" ("**FCLLC**"). See **Exh. B.**

43. Neither entity was active at the time of the 2016 payments or at the time of the filing of the Complaint in 2021.

44. The Former Trustee should not have brought the Complaint against either First Clearing Corp.

45. Rather, the correct entity appears to be a Texas corporation formerly known as HDVest, which currently operates as "Avantax Investment Services, Inc." ("**Avantax**"), following a September 12, 2019 name change. See **Exh. C**.

46. This entity cashed the checks in question, as evidenced by the endorsements on the checks. See **Exh. D**.

47. This entity appears to be the correct entity to be targeted by this Complaint; it received the money from Debtor, after the checks were cleared by FCLLC, predecessor to WFCS.

48. Vacating the judgment pursuant to Rule 60(b)(1) would, normally, be the correct course of action, as judgment was entered based upon a mistake made by Former Trustee.

49. Here, however, Former Trustee's judgment against First Clearing Corp. was obtained on June 6, 2022, outside the one-year limit on relief under Rules 60(b)(1) to (3).

50. This leaves recourse to vacating under Rule 60(b)(6), which allows this Court to exercise its authority to vacate a judgment that cannot be vacated via the other provisions of Rule 60(b).

51. Doing so will, first, correct the error of a judgment entered against the wrong entity.

52. Secondly, vacating the judgment pursuant to Rule 60(b)(6) allow Successor Trustee to amend the Complaint, so as to name and serve Avantax (formerly known as HDVest) as the correct defendant, and pursue judgment against that entity.

53. In the absence of the relief requested herein, the Estate and its creditors will be deprived of an asset worth more than $1,000,000.00 against Avantax, a credit-worthy defendant.

54. Finally, amending the complaint following the vacating of the erroneous judgment would be permissible under the Federal Rules. F.R.C.P. 15 "embodies a liberal approach to pleading." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d. Cir. 2006).

55. "The clear preference embodied in Rule 15 is for *merits-based* decision making." *T. Mobile Ne. LLC v. City of Wilmington, De.*, 913 F.3d 311, 328 (3d. Cir. 2019)(emphasis added).

56. Amendment is permitted even when the claim would otherwise be barred by statute of limitations considerations, so long as the proposed amendment relates back to the date of the original pleading pursuant to Rule 15(c). *Anderson v. Bondex Int'l, Inc.*, 552 F.App'x 153, 156 (3d Cir. 2014).

57. Rule 15 (c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside of an applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010)(internal quotations omitted).

58. If the amendment meets the requirements of Rule 15(c), "the amended complaint is treated, for statute of limitations purposes, as if it had been filed at the time of the original complaint." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 189 (3d. Cir. 2001).

59. Rule 15(c) imposes three conditions on relating claims back. First, the claim against the newly named defendant must have arisen "out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *Krupski*, 560 U.S. at 545 (quoting Fed. R. Civ. Pro. 15(c)(1)(B), (C)).

60. Second, "within the period provided by Rule 4(m) for serving the summons and complaint (which is ordinarily 120 days from when the complaint is filed…the newly named defendant must have received such notice of the action that it will not be prejudiced in defending on the merits." Id. (internal quotations omitted).

61. Finally, the plaintiff must show that, within the Rule 4(m) period, the newly named defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Id. (internal quotations omitted).

62. The question under the Rule 4(m) analysis, per the Supreme Court, is "[W]hat the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint." *Krupski*, 560 U.S. at 554.

63. Courts have found that the notice and understanding requirements are easily met in cases involving closely related, similarly named corporate entities where the incorrect corporate

sibling was named. *See e.g. Morel v. DaimlerChrysler AG*, 565 F.3d 20, 27 (1st Cir. 2009)(where complaint conveyed plaintiffs' attempt to sue automobile manufacturer, but complaint erroneously named a legally distinct but closely related entity, the manufacturer should have realized it had not been named because of plaintiffs' mistake); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 473-475 (4th Cir. 2007)(en banc)(where complaint named parent company, but described subsidiary company, subsidiary company knew or should have known it had not been named because of plaintiff's mistake).

64. Here, the companies in question had a longstanding relationship, dating back to 2001, and a period of common ownership and control by Wells Fargo.

65. FCLLC, successor by mergers to the original Defendant and predecessor to WFCS, cleared the checks on behalf of a client and former corporate sibling, HDVest.

66. HDVest, under the Rule 4(m) analysis discussed by the Supreme Court in *Krupski*, should have reasonably understood the intent of Former Trustee in naming their clearing agent and former corporate sibling.

67. As in *Morel* and *Praxair*, HDVest had strong reason to suspect that but for Former Trustee's error in tracing the correct corporate entity in a web of connected and formerly connected entities, it would have been correctly named as Defendant.

## CONCLUSION

**WHEREFORE**, the Successor Trustee respectfully requests that the Court enter an Order vacating the judgment against Defendant in this matter, authorize the filing of an amended complaint against the proper defendant, substitute Successor Trustee as Plaintiff, amend the caption, and grant such other and further relief as is just and warranted.

**McManimon Scotland & Baumann, LLC**,
counsel to Andrea Dobin, Successor Trustee

By: */s/ Andrea Dobin*

April 23, 2025

427 Riverview Plaza
Trenton, NJ 08611
Telephone: (973) 323-8667
adobin@msbnj.com